Filed 7/27/15  P. v. Floyd CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JAMES EDWARD FLOYD,<br><br>        Defendant and Appellant. | C076236<br><br>(Super. Ct. No. 13F07539) |

A jury convicted defendant James Floyd of one count of first degree residential burglary and one count of contempt of court for violation of a protective order, a misdemeanor.  The court found true an allegation that defendant had suffered a prior conviction for first degree burglary.  The trial court denied defendant's *Romero*[1] motion to strike his prior felony conviction, and sentenced defendant to a total of 13 years in prison.  The court doubled the midterm for burglary pursuant to Penal Code section 667,

_____

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

1

subdivision (e)(1), sentencing defendant to eight years in prison.[2]  The trial court also imposed a five-year enhancement pursuant to section 667, subdivision (a)(1) for the prior conviction for a serious felony.

Defendant argues the trial court abused its discretion in denying his *Romero* motion.  We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The present burglary conviction arose out of an incident on October 20, 2013, at the apartment of Nabresha Gethers, defendant's onetime girlfriend and mother of his child.  They had known each other since 2009, and during their time together Gethers worked as a prostitute, giving all of her earnings to defendant.

Around August 2011, when they were living in Los Angeles, defendant and Gethers had an argument and hit each other.  The police were called, defendant was arrested, and the court issued a restraining order against him.

Their son was born in 2012.  Gethers's relationship with defendant was on-and-off during that time.  After the baby was born, Gethers did not want to be with defendant, and stopped working as a prostitute because she wanted a better life for her son.  However, defendant kept calling Gethers because he wanted to be with her and with his son.  He would go to Gethers's parents' house and honk his horn in the middle of the night, or break Gethers's windshield out if she did not let him see his son.

Gethers did not call the authorities every time defendant showed up at her apartment because she was afraid of being evicted.  But she called the sheriff on October

---

[2]  Further statutory references to sections of an undesignated code are to the Penal Code.

Section 667, subdivision (e)(1) provides:  "If a defendant has one prior serious and/or violent felony conviction as defined in subdivision (d) that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."

18, 2013. She complained that defendant was knocking on her door and peeking in her windows. She told the officers that she had a restraining order against defendant. Defendant was not at the apartment when sheriff's deputies arrived; however, they returned about 1:00 a.m., saw defendant standing in front of the apartment, and arrested him.

The next day, October 19, 2013, defendant sent a series of text messages around 4:00 p.m. In order, they said: "Somebody left a bike in your house. You might get evicted today. All over. Told them to come down here. Let's see who's ready to die for you. Why are you crying? What's wrong?" At some point, defendant also texted Gethers pictures of her personal property, including her watch, jeans, purse, Social Security card, and her son's Social Security card.

When Gethers went to her apartment on October 20, 2013, she found the apartment had been flooded. The front windows were all open and the screens were off. Everything that had been in her closet was strewn around her living room. Her papers and mail were in her bathtub. Defendant's prints were found on the exterior master bedroom window, the exterior kitchen window, and the exterior living room window.[3]

## DISCUSSION

Defendant argues the trial court abused its discretion when it denied his motion to strike his prior strike pursuant to his *Romero* motion. He argues that imposition of the strike enhancement was "overkill."

Defendant's prior strike was a first degree burglary conviction from San Francisco County. The San Francisco Superior Court indicated the original docket could not be located, so little is known of the underlying facts. Defendant received probation for the

---

[3] The jury found defendant not guilty of a second count of first degree residential burglary and one count of harassment. The factual background does not focus on these allegations.

burglary. Defendant's California Law Enforcement Telecommunications System (CLETS) printout, or certified rap sheet, showed arrests and detentions beginning in 1996, when defendant was a juvenile. Over 60 incidents were listed.

Failure to strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.) We will not conclude that the trial court abused its discretion unless its decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony, supra*, at pp. 376-377.)

A claim that the trial court abused its discretion in failing to strike a prior felony conviction will succeed only in limited circumstances. (*People v. Carmony, supra*, 33 Cal.4th at p. 378.) Such circumstances include situations where the trial court is not aware of its discretion to dismiss, or where it considered impermissible factors in refusing to dismiss. (*Ibid*.) "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People* v. *Myers* (1999) 69 Cal.App.4th 305, 310.)

The factors to be considered by the trial court are, "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the

defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  Only if these factors "manifestly support the striking of a prior conviction and no reasonable minds could differ" does the failure to strike constitute an abuse of discretion." (*People v. Carmony, supra*, 33 Cal.4th at p. 378.)

The trial court considered the nature and circumstances of defendant's present felony when it stated:  "The specifics of the crimes themselves, they are quite serious, I get the point.  But there are first-degree burg[larie]s and there are first-degree burg[larie]s.  And this is not one of the -- there are a lot of peculiar aspects to these, as I think you would agree.  [¶] . . . [¶] . . . And they are not classic first-degree burg[larie]s."

The trial court considered the prior serious felony when it stated:  "I think it's unfortunate that he didn't get prison on the San Francisco burg[lary] because that might have gotten his attention in a way that obviously probation didn't.   And typically it's an unusual case where we don't impose prison for a first-degree burglary.  That is the intended -- that is the presumptive sentence that the Legislature has declared."

The trial court considered defendant's background, character, and prospects when it stated:  ". . . I very much have in mind the continuing offenses throughout his life, mostly relatively low-level felonies and a number of misdemeanors. . . . [¶] . . . [¶] The reason I'm not granting your Romero motion and striking the strike is because of Mr. Floyd's continued intersection with the criminal justice system, one felony or misdemeanor after another, and as I just said, a lot of them weren't all that serious compared to what we often see, but they were getting increasingly serious, and that is one of the issues.  And they are kind of unremitting; they just keep happening.  [¶]  Mr. Floyd has established a history in the criminal justice system that is exactly within the ambit of what the [L]egislature and the People intended when Three Strikes was passed.  . . . I sometimes strike strikes, Mr. Floyd, but in this case, you are just not a good candidate for

that.  You are what the [L]egislature and the People of the State of California intended to benefit from the Three Strikes Law."

We cannot say that these factors manifestly support the striking of the prior convictions, and that reasonable minds could not differ on the question.  Therefore, there was no abuse of discretion.

## DISPOSITION

The judgment is affirmed.


    BLEASE    , Acting P. J.


We concur:


    NICHOLSON    , J.


    MURRAY    , J.